112 F.3d 689
 37 Fed.R.Serv.3d 780
 The NUTRASWEET COMPANY
v.
VIT-MAR ENTERPRISES, INC., a/k/a Vitmar; The Shiba Group;
Romano Fashions, Inc.; Manoj Parekh; Nimisha Parekh;
Hershey's Trucking & Warehouse, Inc.; Harry Oberlander;
John Does, X, Y, & Z, Being Any Other Persons or Entities
Participating in the Domestic Import Sale or Transport of
the Subject Shipment.
Tekstilschik, a "John Doe", Appellant.
 No. 96-5496
 United States Court of Appeals,
Third Circuit.
 Argued March 25, 1997.
Decided May 5, 1997.
 
 Paul J. Dillon (Argued), Mark D. Jaffe, Greenberg, Dauber & Epstein, Newark, NJ, for Appellant.
 Rodney A. Brown (Argued), Eileen Fox, Cori Sherman, Brown & Fox, New York City, for Appellee.
 Before SLOVITER, Chief Judge, STAPLETON and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 In this grey market case, the district court entered a "temporary restraining order" that had remained in effect for seventy-seven days as of the time of the filing of appellant's notice of appeal. For the reasons set forth below, we conclude that we have jurisdiction to review that "temporary restraining order," and we will remand to the district court with instructions to vacate it.
 
 I. Background
 
 2
 Nutrasweet sold certain shipments of its sweetener Equal to Vitmar Enterprises and the Shiba Group at a 50%-75% discount based on the condition that the buyer would only distribute the product outside the United States. The bill of lading for the shipments contained a provision stating, "THESE COMMODITIES ARE LICENSED BY THE UNITED STATES FOR THE FINAL DESTINATION [UKRAINE] OR [YAKUTSK REGION, RUSSIA]. ANY DIVERSIONS ARE AGAINST THE LAW."
 
 
 3
 While the current record is unclear as to exactly what transpired after the shipment was sold to the Shiba Group, defendant/appellant Tekstilschik, a business entity organized under the laws of the Russian Federation, claims to have acquired one of the shipments in Russia from another Russian company in a barter transaction. Tekstilschik further claims that its decision to have it shipped to the United States was made without knowledge of the marketing restriction imposed by Nutrasweet. Tekstilschik allegedly hired Romano Fashions ("Romano") as its agent for the purpose of bringing the shipment to the United States and processing it through Customs.[1] While the shipment was being processed by the Customs Office, Nutrasweet learned of the shipment's whereabouts and filed the present action to keep Romano from introducing it into the U.S. market. Nutrasweet also learned that the six prior shipments that had been sold for foreign export and distribution only had already been reintroduced into the United States successfully.
 
 
 4
 Nutrasweet filed its suit on May 14, 1996, and made an emergency application for a temporary restraining order on the same day. Nutrasweet and Romano appeared before the district court when that application was presented. At 5:00 p.m. that day, the district court granted a restraining order. The order enjoined the named defendants and "John Does X, Y & Z, being any other persons or entities participating in the domestic import, sale or transport of the subject shipment" from taking possession of or otherwise dealing with the "NutraSweet Pre-Entry Product." The court's order set a hearing on an application for a preliminary injunction for May 22, 1996, and authorized expedited depositions. On May 29, 1996, the hearing had not been held, however, and the district court entered an order resetting it for June 10, 1996. That date, in turn, passed without a hearing on a preliminary injunction having been held and the temporary restraining order remained in effect on June 18, 1996, when Tekstilschik entered a "special appearance for the sole purpose of contesting the temporary restraints."
 
 
 5
 On Tekstilschik's application, the court issued an order to show cause why the temporary restraining order should not be dissolved, returnable June 27, 1996. In connection with the June 27th hearing, Tekstilschik submitted an affidavit of Marina Martinova, one of its officers. The affidavit describes how Tekstilschik allegedly acquired the Equal in Russia in good faith and how it had arranged with Romano to oversee its importation into the United States for a commission of 2-1/2%. In May of 1996, Ms. Martinova was advised in Russia by a named defendant other than Romano that the Nutrasweet had been seized by a court in the United States. It was allegedly from the papers subsequently obtained from this suit that Tekstilschik first learned of Nutrasweet's marketing restrictions.
 
 
 6
 As we read the transcript of the June 27th hearing, the district court decided to deny Tekstilschik's motion to dissolve the temporary restraining order because Tekstilschik had failed to demonstrate "standing" to challenge the restraining order. At the close of the hearing, counsel for Nutrasweet suggested that the court enter a preliminary injunction. The court declined to do so in the absence of a unanimous agreement of counsel, however, noting that no preliminary injunction record had been developed and observing: "If I am going to grant a preliminary injunction, I have got to make specific findings of fact." Joint App. at 302. On July 15th, the district court entered an order denying Tekstilschik's application to dissolve the temporary restraining order as to it.
 
 
 7
 On July 18, 1996, before a hearing on a preliminary injunction had been held, the district court granted an application of defendants other than Tekstilschik that all proceedings be stayed pending completion of a criminal investigation of several of the defendants.[2] On July 30, 1996, Tekstilschik filed this appeal. Its notice of appeal states that it seeks to challenge (1) the temporary restraining order, (2) the order denying its motion to dissolve that order, and (3) the order staying all proceedings.[3]II. Jurisdiction
 
 
 8
 As a general proposition, orders granting or denying temporary restraining orders are unappealable. Vuitton v. White, 945 F.2d 569, 572 (3d Cir.1991). However, orders granting or denying preliminary injunctions are immediately appealable pursuant to 28 U.S.C. § 1292(a)(1). Section 1292(a)(1) states that "the courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." The rationale for distinguishing between a temporary restraining order and a preliminary injunction is that temporary restraining orders are of short duration and terminate with a ruling on the preliminary injunction, making an immediate appeal unnecessary to protect the rights of the parties. Id. at 573.
 
 
 9
 Tekstilschik claims that we have appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Nutrasweet's position, on the other hand, is that we lack jurisdiction because the district court has done nothing more than enter a temporary restraining order.
 
 
 10
 Rule 65(b) of the Federal Rules of Civil Procedure directs that a temporary restraining order issued without notice to the adverse party shall expire by its own terms no later than 10 days after its entry, unless, for good cause shown, it is extended for a like period or unless the party against whom it is entered consents to an extension. Fed.R.Civ.P. 65(b). The time limitations imposed by this rule thus apply, when read literally, only to temporary restraining orders issued without notice. According to Nutrasweet, the rule is inapplicable here because Tekstilschik allegedly received notice of the TRO application, as a matter of law, when its agent Romano received such notice. While it is not clear to us that Romano was Tekstilschik's agent for purposes of this litigation, or that notice to Romano in the United States on the day of the application should be imputed to Tekstilschik in Russia, we may assume for present purposes that the district court's temporary restraining order was entered with notice to Tekstilschik.
 
 
 11
 A temporary restraining order can inflict substantial injury on a defendant whether or not it had an opportunity to oppose its entry. In recognition of this fact, courts have held that temporary restraining orders, even when entered with notice, cannot be continued indefinitely without observance of the safeguards required for entry of a preliminary injunction and that temporary restraining orders of indefinite duration, whether or not issued with notice, are subject to appellate review. The most prevalent view is that a temporary restraining order, even if issued with notice, cannot be continued beyond the periods prescribed in Fed.R.Civ.P. 65(b) without being treated as the equivalent of a preliminary injunction and thus subject to appellate review.
 
 
 12
 In Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the district court had entered a temporary restraining order upon the filing of the complaint restraining the government from carrying out a decision to discharge the plaintiff and had set a hearing on the application for a preliminary injunction for the following week. Neither the Supreme Court nor the opinion of the court of appeals reports whether the restraining order was entered with notice, but it is clear that the government had been notified at some point prior to the preliminary injunction hearing and was present for that hearing. In connection with the application for a preliminary injunction, the district court wished to hear the testimony of the official who made the discharge decision. When the government refused to produce this witness, the district court ordered the temporary restraining order continued indefinitely, stating that the plaintiff would suffer irreparable injury without a continuation. The restraining order remained in effect at the time the government filed its notice of appeal.
 
 
 13
 The Supreme Court held that the temporary restraining order should be treated as a preliminary injunction. In light of the Court's failure to make a finding as to whether there had been notice before the restraining order was entered, we deduce that the Court implicitly held that the existence of notice would not make the provisions of Rule 65(b) inapplicable. Indeed, the Court referred to the fact that an adversary hearing had been held as a factor supporting its holding. The Court observed:
 
 
 14
 The Court of Appeals whose judgment we are reviewing has held that a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions. National Mediation Board v. Airline [Air Line] Pilots Assn., 116 U.S. App. D.C. 300, 323 F.2d 305 (1963). We believe that this analysis is correct, at least in the type of situation presented here, and comports with general principles imposing strict limitations on the scope of temporary restraining orders. A district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding. In this case, where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified. Therefore we view the order at issue here as a preliminary injunction.
 
 
 15
 Sampson, 415 U.S. at 86-88, 94 S.Ct. at 951 (footnote omitted).
 
 
 16
 This court reached a similar conclusion in Sims v. Greene, 160 F.2d 512 (3d Cir.1947). There, the district court had entered an ex parte temporary restraining order on December 2, 1946, which, by its own terms, was to expire in ten days. The order was first extended for an additional ten days and then extended again, with the defendant's consent, until the preliminary injunction hearing commenced on January 13, 1947. At that hearing, the defendant moved to vacate the temporary restraining order and the court, after denying the motion, extended the temporary restraining order from January 23, 1947, to February 3, 1947. The defendant immediately appealed that extension.
 
 
 17
 Judge Biggs, writing for the court, held that we had jurisdiction over the appeal. The fact that the temporary restraining order had been issued ex parte played no apparent role in the analysis. As Judge Biggs reasoned:
 
 
 18
 When a temporary restraining order, purporting to be"temporary" is continued for a substantial length of time past the period prescribed by Section 381 of 28 U.S.C.A.[4] without the consent of the party against which it issued and without the safeguards prescribed by Rule 65(b) it ceases to be a "temporary restraining order" within the purview of that section and becomes a preliminary injunction which cannot be maintained unless the court issuing it sets out the findings of fact and the conclusions of law which constitute the grounds for its action as required by Rule 52(a).
 
 
 19
 In our opinion the restraining order now in effect in the District Court must be treated as a temporary injunction, issued without the consent of the defendant, in the face of his motion to dissolve it, and contrary to the provisions of Rule 52(a). It is clear that an appeal lies from a temporary injunction. Deckert v. Independence Shares Corporation, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 182 [189 (1940)]. The appeal at bar therefore may not be dismissed and the order restraining the defendant must be reversed....
 
 
 20
 Sims, 160 F.2d at 517 (footnote added).
 
 
 21
 In Pan American World Airways v. Flight Engineers' International Association, 306 F.2d 840 (2d Cir.1962), the Court of Appeals for the Second Circuit, in a similar situation, expressly rejected the argument "that the time limits set forth in Rule 65(b) ... are applicable only to situations where the temporary restraining order was issued ex parte." Id. at 842. The court explained that the receipt of notice and an opportunity to comment was not alone enough to justify a restraint longer than that authorized by Rule 65(b). Inherent in the scheme of which that rule is a part is the concept that a longer restraint can be justified only by an appropriate adjudication which is based on a record compiled in response to an application for a preliminary injunction, and which is subject to appellate review. As the court put it:
 
 
 22
 The fact that notice is given and a hearing held cannot serve to extend indefinitely beyond the period limited by the Rule the time during which a temporary restraining order remains effective. The statute contemplates that notice and hearing shall result in an appropriate adjudication, i.e. the issuance or denial of a preliminary injunction, not in extension of the temporary stay....
 
 
 23
 We hold, therefore, that the continuation of the temporary restraining order beyond the period of statutory authorization, having, as it does, the same practical effect as the issuance of a preliminary injunction, is appealable within the meaning and intent of 28 U.S.C. § 1292(a)(1).
 
 
 24
 Pan American World Airways, 306 F.2d at 842-43 (footnote omitted).
 
 
 25
 More recent cases reflecting a similar analysis include San Francisco Real Estate Investors v. Real Estate Investment, 692 F.2d 814 (1st Cir.1982); United States v. Board of Education of City of Chicago, 11 F.3d 668 (7th Cir.1992); Quinn v. State of Missouri, 839 F.2d 425 (8th Cir.1988).
 
 
 26
 On July 15, 1996, the district court's temporary restraining order in this case had been in effect for sixty-two days, and the district court had been aware for twenty-seven days that Tekstilschik did not consent to its continuing existence. The district court's order of July 15th continued that "temporary" restraint indefinitely. Under these circumstances, we hold that we have jurisdiction under 28 U.S.C. § 1292(a) to review the district court's order of July 15, 1996, denying the motion to vacate and continuing the "temporary restraining order" over Tekstilschik's objection.[5]
 
 III. The Merits
 
 27
 Sims v. Greene controls the merits of this appeal as well as the jurisdictional issue. The district court's July 15th order denying the motion to vacate and thus continuing the temporary restraining order must be vacated because it had the same effect as a preliminary injunction, but was entered without the development of a preliminary injunction record and findings of fact by the court.
 
 
 28
 We also hold that the district court erred in concluding that Tekstilschik had no standing to challenge the order continuing the restraint. Assuming that what the court meant in finding Tekstilschik to be without "standing" was that Tekstilschik lacked legal authority to ask the court for the relief it sought, we disagree. Tekstilschik asked relief from the temporary restraining order because it was concededly an "entit[y] participating in the domestic import, sale or transport of the subject shipment" and thus was enjoined by the court's orders of May 14th and July 15th, on pain of contempt, from "dealing" in any way with goods that it claims to own. It is not a plaintiff seeking the court's assistance; rather, it is, in effect, a defendant seeking to be relieved of the restraint of court process issued at the instance of another. In short, we conclude that the fact that Tekstilschik is subject to the restraint imposed and continued by the district court's orders of May 14 and July 15, 1996, gives it the authority to challenge those orders in the district court insofar as they relate to it.IV. Conclusion
 
 
 29
 We will remand this matter to the district court with instructions that the outstanding temporary restraining order be vacated as to Tekstilschik forthwith. The district court is, of course, not precluded from entering a preliminary injunction applicable to Tekstilschik if that injunction is entered with the safeguards required by law.
 
 
 
 [1]
 Romano Fashions is owned by Manoj and Nimisha Parekh, also named as defendants in this action. Apparently, the Parekhs own the Shiba Group, Vit-Mar Enterprises and numerous other entities. It is Nutrasweet's position that the Parekhs are involved in a profitable scam whereby they purchase shipments of Equal under the guise of these companies at the discounted price by misrepresenting to Nutrasweet that the shipment will be exported and sold in a foreign market. After purchasing the product at a substantial discount, Nutrasweet alleges that the Parekhs fraudulently distribute it in the U.S. via the different companies, disrupting Nutrasweet's domestic market
 
 
 [2]
 The Parekhs and Romano Fashions are the subject of an ongoing criminal investigation in New Jersey in Borden v. Airport Warehousing & Duty Free, et. al., 95 Civ. 4296, concerning allegations similar to those in Nutrasweet's complaint
 
 
 [3]
 We note that when this appeal was taken the shipment that is the subject of the restraining order was also the subject of a writ of replevin issued by the district court on May 15, 1996. No appeal has been taken from the issuing of that process, and it has not been challenged in the briefing before us. It is, of course, always subject to challenge in the district court, however, and the existence of that process does not deprive Tekstilschik of a right to seek relief from the temporary restraining order
 
 
 [4]
 After provisions of § 381 were included without material change in Fed.R.Civ.P. 65(b), it was repealed by the Judicial Code Revision Act of 1948, 62 Stat. 997, for the stated reason that it was covered by Rule 65. See H.R.Rep. No. 308, 80th Cong., 1st Sess., A236 (1947)
 
 
 [5]
 We reject Nutrasweet's contention that Tekstilschik's appeal was untimely. Its notice of appeal from the district court's July 15th order was filed on July 30th
 We need not, and do not, reach the issue of whether we would have jurisdiction to review the district court's stay order. Tekstilschik does not challenge that order in its brief. It stresses only that the stay order may exacerbate the effect of the refusal to vacate the "temporary restraining order."