# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-4092

CHICAGO UNITED INDUSTRIES, LTD., *et al.*,

*Plaintiffs-Appellees*,

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellants*.

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5011—**Milton I. Shadur**, *Judge*.

---

ARGUED MARCH 28, 2006—DECIDED APRIL 25, 2006

---

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*.  This appeal presents jurisdictional issues, specifically regarding temporary restraining orders and preliminary injunctions, arising from a dispute between the City of Chicago and one of its contractors, Chicago United Industries. (The other parties to the appeal can be ignored.) Believing that CUI had billed the City for goods that the contractor knew it had not delivered, the City, after months of wrangling, notified CUI that it proposed to cancel all CUI's contracts with the City and bar

it ("debarment," the parties call this) from further contracts with the City. The company was given 30 days to respond to the proposal; it responded; and the City then terminated the contracts and instituted a three-year bar, whereupon CUI filed this suit in the federal district court in Chicago. The suit sought injunctive relief on the ground that the City had violated the due process clause of the Fourteenth Amendment by failing to give CUI a predeprivation hearing. CUI moved for a preliminary injunction, and (until it was granted) a temporary restraining order, to prevent the cancellation and debarment.

The court issued the TRO on August 31, 2005, the day after CUI had moved for it, saying that "plaintiffs have no adequate remedy at law as there is no appeal provision of the debarment at the City level, and any further administrative appeal would be an inadequate opportunity to present the constitutional matters at issue in this litigation." The court added that the plaintiffs would "suffer irreparable harm if the temporary restraining order is not granted since continuation of the debarment, even for a short period of time, will materially impair their business and their ability to do business." The TRO stated that the defendants were "temporarily restrained and enjoined from 1) enforcing the debarment of [CUI] 2) from canceling any existing contracts that CUI has with the City of Chicago and 3) from conducting any further decertification or administrative hearing regarding, related to or based upon the issue of debarment pending further action of this Court."

The order was to remain in force for 10 days, but at the end of that period the court renewed it for another 10 days. During the extension period, the City notified CUI that it was withdrawing its cancellation of CUI's contracts with the City and rescinding the debarment order, though

without prejudice to seeking both cancellation and debarment in the future on the basis of the same alleged fraudulent billing. On the basis of these representations, the City moved to dismiss CUI's lawsuit as moot. The district court, troubled by the "without prejudice" qualification, denied the motion. The temporary restraining order was then extended by agreement of the parties for another month, to October 31.

During this further extension period, CUI asked the district court to modify the order to prevent the City from circumventing it. Also on the table was the need to set a date for the hearing on CUI's motion for a preliminary injunction. Because a temporary restraining order cannot remain in force for more than 20 days without the consent of the parties, Fed. R. Civ. P. 65(b), the district court offered to hold the hearing on November 7. The City asked for an extension. The district court offered to extend the date to November 21, provided the City agreed to an extension of the restraining order for another month, to November 28. The City agreed. But before either date arrived, the court modified the TRO, essentially as requested by CUI, by adding to its previous terms that the City was also restrained "from [1] awarding any of the following contracts [ten are listed] to any company other than Chicago United if it is the lowest responsive bidder, or using its emergency purchasing power to circumvent the award to Chicago United and pay a higher price to some other company, unless and until the City provides this Court with a showing that awarding the contract to or purchasing such goods from such other company is in accordance with the *status quo ante bellum* . . . and . . . [2] imposing any restrictions on communications between Chicago United and employees of the City with the exception that Chicago United and its

attorneys may not speak directly with any employees of the City regarding matters directly related to this action."

A temporary restraining order is not appealable, despite its close resemblance to a preliminary injunction, which is appealable. 28 U.S.C. § 1292(a)(1). But if kept in force by the district court for more than 20 days without the consent of the parties, the order is deemed a preliminary injunction and so is appealable, since otherwise a district court could by the simple expedient of extending the TRO circumvent (to use CUI's favorite word) the right of appeal granted by section 1292(a)(1). *Sampson v. Murray*, 415 U.S. 61, 86-88 (1974); *United Airlines, Inc. v. U.S. Bank N.A.*, 406 F.3d 918, 923 (7th Cir. 2005); *United States v. Board of Education of City of Chicago*, 11 F.3d 668, 671-72 (7th Cir. 1993); *SEC v. Black*, 163 F.3d 188, 194 (3d Cir. 1998). CUI argues that the City consented to the final extension and therefore cannot appeal.

The City could have elided the issue of consent by waiting until November 29, the day after the expiration of the period of extension that the parties had agreed upon, to appeal. For at that point there would have been no doubt that the temporary restraining order was appealable. Instead the City filed its notice of appeal during the extension period. The preliminary-injunction hearing had been set for November 21, and evidently the City didn't want to participate in such a hearing. Had it done so, and a preliminary injunction been issued, the City could, again uncontroversially, have appealed. When the City foreswore the hearing, the district court extended the TRO indefinitely—thus unequivocally converting it into an appealable preliminary injunction—without the City's agreement. Again the City could have appealed uncontroversially. Furthermore, although the only notice of appeal that the City filed preceded the

expiration of the TRO on November 28, Rule 4(a)(2) of the Federal Rules of Appellate Procedure provides that "a notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry," see also *Otis v. Chicago*, 29 F.3d 1159, 1166 (7th Cir. 1994) (en banc), and that is a plausible description of what happened here. The TRO "announced" the preliminary relief that became an appealable order by the passage of time, bringing the case within our jurisdiction after November 28, 2005, whether or not the TRO was modified.

In any event it is apparent that the City did not consent to the extension of the TRO that expired on that date. It consented to the extension of the *existing* TRO, not to the entry of a modified order the text of which it had not seen because the district judge had not yet drafted it. The judge had told the City that he would accept a modified order if the parties could agree to one, and if not he would review competing draft orders submitted by the parties and decide which one to adopt. But he entered the modified order right after CUI submitted its draft order and *before* the City submitted its draft order.

CUI ripostes that there was no "modification," that all that the new provisions that we quoted did was to particularize the original order, which had forbidden cancellation and debarment, so that in consenting to the extension of the original order the City should be taken to have consented to the additional provisions. That argument is frivolous. The additional provisions are vague, open-ended, and onerous, enjoining as they do conduct that goes far beyond cancellation and debarment. The City cannot be deemed to have consented to them.

In insisting that there was no modification, CUI further argues that the new provisions were intended merely to

maintain the "status quo ante bellum" ("bellum" being Latin for "war"). That temporary restraining orders and preliminary injunctions are intended to "preserve the status quo" is indeed a common formula, e.g., *Ellis v. Sheahan*, 412 F.3d 754, 757 (7th Cir. 2005), but it is much, and rightly, criticized. E.g., *Praefke Auto Electric & Battery Co., Inc. v. Tecumseh Products Co.*, 255 F.3d 460, 464 (7th Cir. 2001); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1001-04 (10th Cir. 2004) (en banc) (separate opinion of Seymour, J.), affirmed on other grounds, 126 S. Ct. 1211 (2006); *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 348 (6th Cir. 1998), *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359-60 (4th Cir. 1991); *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 813-14 (3d Cir. 1989); *Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974); Thomas R. Lee, "Preliminary Injunctions and the Status Quo," 58 *Wash. & Lee L. Rev.* 109, 157-66 (2001).

Preliminary relief is properly sought only to avert irreparable harm to the moving party. *In re Aimster Copyright Litigation*, 334 F.3d 643, 655-56 (7th Cir. 2003); *Jones v. InfoCure Corp.*, 310 F.3d 529, 534-35 (7th Cir. 2002); *Rum Creek Coal Sales, Inc. v. Caperton*, *supra*, 926 F.2d at 359-60. Whether and in what sense the grant of relief would change or preserve some previous state of affairs is neither here nor there. To worry these questions is merely to fuzz up the legal standard. What was the "status quo" before the parties' dispute in this case? Was it that a contractor accused of fraud cannot be terminated and debarred without a pretermination hearing? That certainly was not what the City's rules provided. The merits of the underlying litigation are not before us; but the idea that a public contractor has a constitutional right to enjoin termination if he isn't given a hearing before his contract is terminated is

sufficiently outré to make us deeply uncertain what the status quo was before CUI's suit. Maybe it was that the City *could* terminate and bar contractors without a hearing, for there is no absolute constitutional right to a hearing before a public contract can be cancelled. *Ellis v. Sheahan*, *supra*, 412 F.3d at 758; *Mid-American Waste Systems, Inc. v. City of Gary*, 49 F.3d 286, 291-92 (7th Cir. 1995); *Northlake Community Hospital v. United States*, 654 F.2d 1234, 1241-42 (7th Cir. 1981).

The amount and timing of the process due when a deprivation of liberty or property (in the constitutional sense of these terms) is alleged varies with circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In *Ellis* we said that it didn't "make a lot of sense to say that when a postdeprivation hearing not only is feasible but will give the deprived individual a completely adequate remedy, . . . due process requires a right to a predeprivation hearing as well. Such a rigid approach would be inconsistent with the spirit, at least, of the sliding-scale approach of *Mathews*, which requires comparison of the costs and benefits of alternative remedial mechanisms." 412 F.3d at 758. And earlier, in *Mid-American Waste Systems*, we had explained that "the adequacy of litigation as a means to determine the meaning of a contract is a premise of our legal system. Mid-American's opportunity to litigate in the courts of Indiana (where it has already filed suit) therefore is all the process 'due' for ordinary claims of breach of contract . . . . [W]hen the issue is the meaning of a commercial contract, a prior hearing is *unnecessary*, and the opportunity to litigate in state court is all the process 'due' to determine whether the state has kept its promise." 49 F.3d at 291 (emphasis in original).

Nor, so far as the debarment issue is concerned, is it at all clear that there is a property right in being eligible

to receive future contracts. *Ferencz v. Hairston*, 119 F.3d 1244, 1247-48 (6th Cir. 1997); *Kim Construction Co. v. Board of Trustees of Village of Mundelein*, 14 F.3d 1243, 1245-47 (7th Cir. 1994); *Blackburn v. City of Marshall*, 42 F.3d 925, 936-37, 940 (5th Cir. 1995).

Of course, there are cases in which the normal remedy for a breach of contract, namely damages, is inadequate, and those are cases in which the victim of an alleged breach can seek preliminary relief. But *Ellis* and *Mid-American* suggest that the right to seek such relief is not a constitutional right to a predeprivation hearing in every case of alleged breach of a public contract, though that is a form of preliminary relief. *Ellis v. Sheahan*, *supra*, 412 F.3d at 757.

As a detail, we note that, preoccupied with the status quo issue, the district judge did not require a persuasive showing of irreparable harm by CUI. The normal remedy for breach of contract is an award of damages, not an order of specific performance (i.e., a positive injunction); "practically speaking the duty created by a contract is just to perform or pay damages, for only if damages are inadequate relief in the particular circumstances of the case will specific performance be ordered." *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Company, Inc.*, 313 F.3d 385, 389 (7th Cir. 2002); see, e.g., *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996); *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002). CUI did not explain why an award of damages would not make it whole. It merely asserted that "without this injunction, the Plaintiffs' business will die and 40 contracts will be terminated. Those contracts represent the majority of all business conducted by CUI."

Actually the district judge was less concerned with CUI's right to a hearing, as a possible element of the status quo

ante, than with the fact that until recently CUI had been selling to Chicago and receiving payment. That was the status quo in his eyes. Yet Chicago's ability to stop dealing with a contractor that it believed was cheating it was as much a part of the status quo ante as was the fact of previous purchases from the contractor.

We should not leave the issue of status quo without considering Judge McConnell's thoughtful recent defense of the utility of the concept. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, *supra*, 389 F.3d at 1012-18 (concurring opinion). "It is one thing for a court to preserve its power to grant effectual relief by preventing parties from making unilateral and irremediable changes during the course of litigation, and quite another for a court to force the parties to make significant alterations in their practices before there has been time for a trial on the merits." *Id*. at 1015. "Moreover, preserving the status quo enables the court to stay relatively neutral in the underlying legal dispute. The restrictions placed on the parties can be understood as requiring only that they act in a manner consistent with the existence of a good-faith dispute about the relevant legal entitlements. The moving party is not given any rights, even temporarily, that would normally be his only if the legal dispute were resolved in his favor." *Id*. "Fundamentally, the reluctance to disturb the status quo prior to trial on the merits is an expression of judicial humility . . . . [A] court bears more direct moral responsibility for harms that result from its intervention than from its nonintervention, and more direct responsibility when it intervenes to change the status quo than when it intervenes to preserve it . . . . Moreover, like the doctrine of *stare decisis*, preserving the status quo serves to protect the settled expectations of the parties. Disrupting the status quo may provide a benefit to one party, but only by depriving the other party of

some right he previously enjoyed. Although the harm and the benefit may be of equivalent magnitude on paper, in reality, deprivation of a thing already possessed is felt more acutely than lack of a benefit only hoped for." *Id.* at 1015-16.

Now it may be that these considerations are better invoked on a case-by-case basis than made the basis of a rule that depends on a judge's ability to determine what state of affairs should be viewed as the status quo. But it is unnecessary in this case to come down on one side or the other of that question. For notice that Judge McConnell is arguing for making it harder to issue preliminary injunctions that change the status quo, not for making it easier to issue preliminary injunctions that preserve the status quo. The issue in this case is the propriety of preliminary relief intended to preserve an arguable status quo.

CUI further argues that the 20-day rule applies only when a TRO is issued without notice. This is a plausible reading of Rule 65(b), but would not make any sense, and is generally and we think correctly rejected. *Nutrasweet Co. v. Vit-Mar Enterprises, Inc.*, 112 F.3d 689, 693-94 (3d Cir. 1997), and cases cited there; *Connell v. Dulien Steel Products, Inc.*, 240 F.2d 414, 417-18 (5th Cir. 1957); see also *Sampson v. Murray, supra*, 415 U.S. at 85-88; *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 442-45 (1974); *Rothner v. City of Chicago*, 879 F.2d 1402, 1419 (7th Cir. 1989). For it would enable a district court to issue a preliminary injunction of indefinite duration without any possibility of the defendant's appealing, simply by calling the injunction a temporary restraining order and being careful to notify the defendant in advance of issuing it. Moreover, a TRO issued after notice, especially if there is a hearing, is procedurally as well as functionally even more like a preliminary injunction than a TRO issued

without notice and hearing, so it would be a considerable paradox if only the latter type of TRO were appealable after 20 days. CUI's suggestion that such an order should be appealable not after 20 days but after a "reasonable" time has elapsed from when it was issued is unsatisfactory; the defendant would be unable, when it filed its notice of appeal, to know whether it was filing too early or too late. The proper interpretation of the "without notice" language in Rule 65(b) is that the rule imposes *additional* restrictions on temporary restraining orders issued without notice, but imposes the 20-day limit on *all* TROs.

To summarize our discussion to this point, the temporary restraining order in this case was modified without party consent and so, the 20 days having expired, was appealable. *United Airlines, Inc. v. U.S. Bank N.A.*, *supra*, 406 F.3d at 923; compare *Geneva Assurance Syndicate, Inc. v. Medical Emergency Services Associates (MESA) S.C.*, 964 F.2d 599, 600 (7th Cir. 1992) (per curiam). But although we thus have jurisdiction of the appeal, we must decide whether the measures taken by the City after the suit was filed have rendered the case moot. The City has reinstated all the cancelled contracts. It has rescinded the debarment. It has adopted a new rule that authorizes, although it does not explicitly require, a hearing before debarment if there are genuine issues of material fact. City of Chicago Debarment Rules, ¶ 7.05(h). (The previous rules made no provision for a hearing.) It has promised us on the record in open court that if termination or debarment proceedings are again instituted against CUI, the contractor will be entitled to a full evidentiary hearing.

These are significant changes since the filing of the suit. It is true that the mere cessation of the conduct sought to be enjoined does not moot a suit to enjoin the

conduct, lest dismissal of the suit leave the defendant free to resume the conduct the next day. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953); *Kikumura v. Turner*, 28 F.3d 592, 597 (7th Cir. 1994). But that is in general rather than in every case. "The case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *United States v. W.T. Grant Co., supra*, 345 U.S. at 633 (citation and quotation marks deleted). In light of the promise made by the City, and the City's new rule, we think it highly unlikely that, should the City reinstate its termination and debarment proceeding against CUI, it will fail to offer CUI a hearing that satisfies the requirements of due process of law.

Comity, moreover—the respect or *politesse* that one government owes another, and thus that the federal government owes state and local governments—requires us to give some credence to the solemn undertakings of local officials. *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004); *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929-30 (7th Cir. 2003); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988); *Building & Construction Dept. v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491-92 (10th Cir. 1993); *Chamber of Commerce of United States of America v. U.S. Dept. of Energy*, 627 F.2d 289, 291-92 (D.C. Cir. 1980). "[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur" if the injunction is lifted. *Troiano v. Supervisor of Elections in Palm Beach County*, 382 F.3d 1276, 1283 (11th Cir. 2004) (emphasis in original). Compare *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982), where the presumption

was rebutted by the city's stating that it intended to reenact the ordinance that had been enjoined.

Comity argues against the casual granting of preliminary relief in a public-contract case, see *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 16 (1st Cir. 2004); cf. *Hoover v. Wagner*, 47 F.3d 845, 850 (7th Cir. 1995), and especially against the district court's assumption in this case—by the issuance of temporary restraining orders continuously extended and, through the addition of vague and encompassing provisions apt to invite contempt proceedings, continuously expanded—of control over local governmental functions in a setting of contentious relations between a city and its contractors. The era of micromanagement of government functions by the federal courts is over.

Nor do we think that CUI actually fears that the City won't give it a hearing. Its concerns lie elsewhere, with what it complains are "circumvention" tactics employed by the City, such as forcing the contractor to communicate regarding its reinstated contracts and bids on future contracts with only a single official, who, according to CUI, ignores the communications; or entertaining CUI's bids but then awarding the contracts to bidders who submit much higher bids. Such conduct is not charged in the complaint, however, and postdates the event on which the complaint is based, namely the issuance of the termination and disbarment orders. Assuming that the charges are accurate, they are best described as retaliation against CUI for fighting the termination and disbarment. The fight is this suit, and CUI won when the City rescinded the orders and promised a full hearing in the event it tries to reinstate them in new proceedings. Retaliation is, with a qualification noted in our recent decision in *Manicki v. Zeilmann*, No. 05-1649, 2006 WL

910333, at *3 (7th Cir. Apr. 11, 2006), a separate wrong from the wrongdoing that precipitated the complaint that led to the retaliation. *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 583 (7th Cir. 1996); *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 725-26 (7th Cir. 1994); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312-13 (7th Cir. 1989). CUI can if it wishes bring a suit (we will not speculate on what legal theory it might be based on) to enjoin the alleged retaliation.

All this said, the suit is saved from complete mootness, though only barely, by CUI's claim to have lost $500,000 in profits as a result of the termination and debarment proceedings. It is true that the "claim" is made only in its brief and oral argument in this court, and not in the complaint. But it is at least plausible that CUI lost profits, even though the contracts were terminated, and the debarment order effective, for only one week, until the first of the TROs was entered. The company argues that payments under the contracts were interrupted and its ability to obtain new business from the City disrupted by the fraud accusation that underlay the City's efforts at termination and debarment. Rule 54(c) of the civil rules entitles a prevailing plaintiff to the relief proper to his claim even if he did not request that relief, *Laskowski v. Spellings*, No. 05-2749, 2006 WL 947567, at *3 (7th Cir. Apr. 13, 2006), because the circumstances bearing on the feasibility of particular forms of relief often change between the initiation of the suit and the rendition of the final judgment.

There is, it is true, an exception for explicit waivers, and, more to the point, for cases in which a damages claim is added at the last minute in a desperate effort to stave off the dismissal of the case as moot. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997), was such a case; "it should

have been clear to the Court of Appeals that a claim for nominal damages, extracted late in the day from [the plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection." See also *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1097-98 (9th Cir. 2001); *Boucher v. Syracuse University*, 164 F.3d 113, 117-18 (2d Cir. 1999). The City argues with considerable force that CUI deliberately withheld its damages claim lest such a claim weaken its case for preliminary relief by indicating that it had incurred no irreparable harm, which is a precondition to such relief. On that ground, *Harris v. City of Houston*, 151 F.3d 186, 191 (5th Cir. 1998), and *Thomas R.W., By and Through Pamela R. v. Massachusetts Dept. of Education*, 130 F.3d 477, 480-81 (1st Cir. 1997), hold that a plaintiff cannot forestall a dismissal for mootness by arguing for the first time on appeal that he can prove damages.

This case is different because the litigation had barely begun before it came to us; had there been no appeal, CUI would doubtless have asked for damages before the litigation had proceeded far. If withholding was a tactic, moreover, it has failed, since we are vacating the injunction, and should circumstances change and CUI again seek preliminary injunctive relief in the district court, the City will be able to argue against a finding of irreparable harm by pointing to CUI's claim for damages.

So while the request for injunctive relief is moot, the case as a whole is not. The temporary restraining order is vacated; and we direct that 7th Cir. R. 36 shall govern the further proceedings in this case in the district court.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*