In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-2764

R. DAVID BOYER, Chapter 7 Trustee,

*Plaintiff-Appellee,*

*v.*

DIMITRIOS MICHAEL BELAVILAS, *et al.*,

*Defendants-Appellants.*

---

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:03-CV-480—**Theresa L. Springmann**, *Judge.*

---

ARGUED DECEMBER 1, 2006—DECIDED JANUARY 5, 2007

---

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
MANION, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Dimitrios Belavilas and his
wife Maria Belavilas each owned 50% of the stock in
D-Man, Inc. When that firm received about $370,000 in
insurance proceeds, Dimitrios and Maria deposited the
checks into custodial accounts (under the Uniform Trans-
fers to Minors Act) for their two children, Angelo and
Nickolas. Maria was the custodian who controlled these
accounts. Instead of using the money for the children's
benefit, Maria soon transferred it to Gyros Express and
Vlako, Inc., entities that Dimirtios and Maria had formed
and controlled.

Dimitrios then filed a bankruptcy petition. He claimed that he had owned only 2% of D-Man and that the insurance proceeds had come to only $2,000. When the Chapter 7 Trustee discovered the truth, he filed an adversary proceeding under 11 U.S.C. §548 to undo these fraudulent conveyances. Dimitrios and Maria maintained, however, that the Trustee could not recover anything, because none of the recipients is a transferee within the scope of 11 U.S.C. §550(a). The children, as minors, could not be treated as transferees, they maintained, because minors do not control UTMA accounts. And Maria could not be a transferee because she was the funds' custodian and had no legal right to the money, and could not be directed to return the money as custodian because the children's accounts were empty. In other words, Dimitrios and Maria argued that a second unlawful transfer (the movement of money from the UTMA accounts to Gyros Express and Vlako) prevented redress of the first unlawful transfer (the placement of D-Man's funds in the children's accounts).

Bankruptcy Judge Grant had none of this and entered a judgment making Maria, Angelo, Nickolas, and Vlako jointly and severally responsible for paying $183,130 to the bankruptcy estate. (The rest of Dimitrios's 50% share of the insurance proceeds was to come from Dimitrios himself, because he controlled the money in the Gyros Express account.) District Judge Springmann affirmed. Maria, Angelo, and Nickolas have appealed; Dimitrios, Vlako, and Gyros Express have not. We infer that Dimitrios and Maria have caused Vlako to re-transfer the funds to hide them from creditors; otherwise the judgment would have been satisfied by now, and Maria and the children would have no remaining liability. (Dimitrios has pleaded guilty to two counts of bankruptcy fraud and is in prison.)

Maria's situation is straightforward. The initial transfer was to the UTMA accounts; Maria was the custodian but

not the "transferee." (One major difference between UTMA custodial accounts and common-law trusts is that a trustee acquires legal title to the assets, while title under the UTMA vests in the beneficiary, though control remains with an adult custodian under §§ 9 and 12, enacted in Indiana as Ind. Code §30-2-8.5-24 and -27.) Section 550(a)(1) of the Bankruptcy Code allows recovery from "the initial transferee of such transfer or the entity for whose benefit such transfer was made". The bankruptcy judge did not commit a clear error in determining that Maria is "the entity for whose benefit" the transfer to the UTMA accounts was made. Maria demonstrated as much by treating the funds as her own—for instead of devoting the money exclusively to the children's welfare, as the UTMA requires, Maria routed most of the cash to Vlako. The whole point of these maneuvers was to keep Dimitrios's share of the insurance proceeds out of his creditors' hands and devote it to the family's benefit.

If Maria had removed only 50% of the balances from the UTMA accounts, she might have been able to demonstrate that this was her share of the insurance money. (We say "might" not only because D-Man was the insured entity—shareholders cannot deal with corporate funds as if they were their own money—but also because money is fungible. Bills did not come color-coded for "Maria's share" and "Dimitrios's share.") But she exercised dominion over all of the money, in despite of both the creditors' rights and those of the children under the UTMA. This was quite enough to incur liability under the "benefit" clause of §550(a)(1).

Maria's argument that the Trustee did not adopt this theory until late in the litigation is unavailing. Pleadings need not specify legal theories, see *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir. 1992), and courts award the relief to which the prevailing party is entitled even if the appropriate theory is not articulated until the

last minute. See Fed. R. Bankr. P. 7054(a) (incorporating Fed. R. Civ. P. 54(c)); *Chicago United Industries, Ltd. v. Chicago*, 445 F.3d 940 (7th Cir. 2006). Maria has not identified any prejudice that the Trustee's delay may have caused; her appeals to the district court and this court have enabled her to make all appropriate arguments about the effect of the "benefit" clause in §550(a)(1).

Making Angelo and Nickolas personally liable for the balances that passed quickly through the UTMA accounts is more problematic. They were "transferees" in the sense that they (rather than Maria) were the legal owners, but they lacked any effective control over the funds' disposition. Section 13 of the UTMA gives the custodian complete authority over the funds, subject to the fiduciary duty imposed by §12 (a duty that Maria violated by transferring the money to Gyros Express and Vlako). Angelo and Nickolas rely on *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988), which held that a person who lacks authority to control the disposition of funds cannot be an "initial transferee" for the purpose of §550(a). The entity at issue in *Bonded Financial* was a bank, which was legally required to follow its client's directions about how funds on account should be used. The bank could not put the money to its own purposes but had to follow orders. Angelo and Nickolas, unlike the bank, were beneficial owners of the money in the UTMA account, so *Bonded Financial* is not dispositive. Still, the minors' lack of control over the custodian does make it hard to equate them with the prototypical transferee. See also *In re Baker & Getty Financial Services, Inc.*, 974 F.2d 712 (6th Cir. 1992).

Once again, however, recovery of a fraudulent conveyance is not limited to a "transferee"; it is enough if the transfer is for a person's benefit. Angelo and Nickolas were—at least initially—beneficiaries of the money

transferred into the UTMA accounts. The problem is not so much with the idea that minors can be "beneficiaries" even though adults control the purse strings as it is with the consequence of the bankruptcy court's joint-and-several-liability judgment. Debts attributable to actual fraud cannot be discharged in bankruptcy, see 11 U.S.C. §523(a)(2)(A), so Angelo and Nickolas may be stuck with this obligation for life and must pay from income they earn as adults, even though they never saw a penny of the money from D-Man's insurance and never had a chance to prevent their parents' financial chicanery. (We say "may be stuck" rather than "would be stuck" because the effect of §523(a)(2)(A) on multi-party money shuffling with intent to defraud a creditor was reserved in *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000).)

Although no case that we have been able to find addresses how preference recovery under §550 relates to minors' custodial accounts, §17(c) of the UTMA addresses the problem of lifetime liability arising from events a minor cannot control: "A minor is not personally liable for an obligation arising from ownership of custodial property or for a tort committed during the custodianship unless the minor is personally at fault." The children's obligation to return the fraudulent conveyance is one "arising from ownership of custodial property". Unless a minor is "at fault"—and the bankruptcy judge held that neither Angelo nor Nickolas bears any fault—all obligations that relate to the UTMA account must be satisfied either from the custodial assets under §17(a) or by the custodian. Maria is personally liable on account of her personal misconduct; that much was settled above. The obligations of Angelo and Nickolas are limited to the custodial property under §17(a). This means all of the custodial funds—not only what came from Dimitrios's 50% of D-Man but also what came from Maria's share. Maria's obligation to repay what she and her husband

jointly stole from their creditors must be satisfied before anything may be left sheltering for the children's benefit. So if any money is retrieved from Vlako (or wherever it has gone from there), Maria and the children must satisfy the judgment before they can restore anything to the UTMA accounts.

The judgment is modified to provide that Angelo and Nickolas are not personally liable, and that their obligations are limited to funds in or traceable to the custodial accounts. As so modified the judgment is affirmed.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*