In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3284

STEPHEN HUMMEL, et al.,

*Plaintiffs-Appellants*,

*v.*

ST. JOSEPH COUNTY BOARD OF COMMISSIONERS, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:10-CV-003 JD — **Jon E. DeGuilio**, *Judge*.

ARGUED APRIL 20, 2015 — DECIDED MARCH 23, 2016

Before WOOD, *Chief Judge*, HAMILTON, *Circuit Judge*, and
DARRAH, *District Judge*[*].

HAMILTON, *Circuit Judge*. This appeal arises from a broad
challenge to the accessibility of state court facilities in St. Joseph County, Indiana, for individuals with disabilities. Over
the years of this lawsuit, some plaintiffs who were formerly

---

[*] The Honorable John W. Darrah, United States District Judge for the
Northern District of Illinois, sitting by designation.

litigating cases in the state court facilities have stopped doing
so. Some plaintiffs have died. Others have dropped their
claims. The lawsuit also seems to have prompted physical
changes to the main courthouse and to the state court's poli-
cies.

In 2014, the district court granted summary judgment for
the defendants on all then-remaining claims. Plaintiffs have
appealed. We affirm, not for any single, central reason, but for
different reasons for the numerous claims. Plaintiffs lack
standing to sue for some of their claims. They failed to present
evidence sufficient to raise genuine disputes of material fact
on other claims. Plaintiffs' strongest claim was that court-
house restrooms were inaccessible. The courthouse has since
been remodeled to become more accessible, so that claim is
moot.

We do not hold that the St. Joseph County courts are fully
compliant with the Americans with Disabilities Act ("ADA")
and the Rehabilitation Act. Rather, we hold only that these
plaintiffs have failed to present evidence sufficient to survive
defendants' motion for summary judgment on the specific
claims before the district court. We express no opinion regard-
ing any possible future claims involving courthouse accessi-
bility. If, in the future, individuals with disabilities experience
problems with access to the St. Joseph County courts, their
claims will need to be decided on a fresh record.

I.   *Factual and Procedural Background*

In January 2010, four plaintiffs—Victoria Means, Tonia
Matney, Stephen Hummel, and Margaret Hummel—sued the
St. Joseph County Board of Commissioners and the City of
South Bend. Plaintiffs were all individuals with disabilities,

and all alleged that they had cases pending in state courts in St. Joseph County. Plaintiffs Means and Matney, who have both since died, used wheelchairs, and Matney had limited vision. Plaintiff Stephen Hummel has limited physical mobility as a result of a stroke. His wife, plaintiff Margaret Hummel, who has since died, had limited physical stamina and ability to walk. Plaintiffs have been represented throughout this case by the same attorney, who is also an individual with a disability and uses a wheelchair.

Plaintiffs sought both injunctive relief and damages, alleging that the St. Joseph County Courthouse in South Bend and the Mishawaka County Services Building (the "Mishawaka Courthouse") did not comply with federal rules ensuring accessibility for individuals using wheelchairs, in violation of the ADA and the Rehabilitation Act.[1] The county operates both buildings, so the claims regarding the accessibility of the actual courthouse buildings were against St. Joseph County. In particular, plaintiffs explained that the courtrooms in the St. Joseph County Courthouse and the Mishawaka Courthouse failed to meet federal accessibility standards with respect to restrooms, elevators, witness stands, jury boxes, jury deliberation rooms, attorney podiums, spectator seating, entrance ramps, clerk counters, services for the blind, and water fountains.

Plaintiffs also alleged that parking around the St. Joseph County Courthouse in South Bend is not accessible to them, especially in inclement weather. They brought this claim

---

[1] Plaintiffs also asserted claims under the United States and Indiana Constitutions. Plaintiffs have not pursued those claims on appeal.

against the city, which operates the parking near the courthouse and the snow removal services. The city was not a defendant on any claims relating to the Mishawaka Courthouse.

On September 16, 2011, the district court granted in part a motion to dismiss, concluding that none of the original plaintiffs had standing to seek injunctive relief against the county because none of them had cases pending in the St. Joseph County courts. Plaintiffs then amended their complaint to add five plaintiffs with then-pending state court cases: Crystal Wright, Karen Brandy-Comer, Shawna Canarecci, Michael Ramos, and Erica Bishop. Wright, Brandy-Comer, and Ramos were also individuals with disabilities caused by mobility impairments. Canarecci and Bishop, by contrast, sought relief on the basis of their representation by an attorney with a disability (the same who represented the original four plaintiffs).

On March 4, 2013, the district court denied plaintiffs' request for a preliminary injunction ordering the defendants to make the desired changes to the St. Joseph County Courthouse. At some point after the preliminary injunction hearing, though, defendants remodeled the St. Joseph County Courthouse restrooms, which plaintiffs agree are now accessible.

In December 2013, the county and city moved for summary judgment on all remaining claims, presenting evidence that their facilities complied with the federal statutes. Plaintiffs offered little evidence to rebut the evidence defendants presented. But plaintiffs filed a cross-motion for partial summary judgment seeking a declaratory judgment and a permanent injunction requiring the county to keep in place the ADA-compliant restrooms it had installed and to enforce one

state court judge's policy that she would accommodate individuals with disabilities by transferring their cases to another courtroom.

By the time of the summary judgment motions, three of the original plaintiffs—Victoria Means, Tonia Matney, and Margaret Hummel—had passed away. Still, claims remained against the city and county for both damages and injunctive relief. Two plaintiffs, Wright and Brandy-Comer, had pending litigation in the St. Joseph Superior Court. Two other plaintiffs, Bishop and Canarecci, sued based on their representation by a disabled lawyer. Plaintiff Ramos's case had been pending in the St. Joseph Superior Court but had been dismissed without prejudice in 2014 before the district court's grant of summary judgment. He nevertheless asserted his claims against defendants when the district court took up the motions for summary judgment.

The district court granted defendants' motion for summary judgment. Many claims failed for lack of standing. The district court dismissed the claims of the two non-disabled plaintiffs represented by a disabled lawyer, saying broadly that Title II of the ADA did not provide for "associational" standing. The court dismissed Ramos's injunctive claims against the county for lack of standing because his case had ended. The court also dismissed Ramos's claims against the city for lack of standing because the Mishawaka Courthouse, where his case had been heard, is not located in the City of South Bend. The court held that Wright and Brandy-Comer, the two disabled plaintiffs with claims then pending at the St. Joseph County Courthouse, lacked standing to proceed with claims against the city for parking accessibility and snow removal practices. The court found no evidence that they had

suffered past injuries that would support standing for damages, and that the prospect of future injury was too speculative to support an injunction.

With those rulings, what remained were damages claims relating to the two courthouses—St. Joseph County and Mishawaka—and injunctive claims relating to the St. Joseph County Courthouse. The district court disposed of those primarily through summary judgment on the merits for defendants. Regarding damages, the court held that there was no evidence that any of the remaining plaintiffs had been injured by any past inaccessibility at either courthouse. Regarding injunctive relief, the court found no evidence that the courthouse buildings remained inaccessible. The court also found that plaintiffs did not have standing to challenge the accessibility of the jury facilities because any injury would be too speculative, and that any challenges to the restrooms were mooted by remodeling that had been done since the beginning of the lawsuit.

The district court denied plaintiffs' motion for summary judgment, noting that plaintiffs had no remaining underlying claims following summary judgment for the defendants, and, regarding the restrooms, the county was unlikely to revert to inaccessible restrooms after remodeling to create accessible ones.

II. *Legal Standards*

Plaintiffs appeal as to both their standing to sue and the merits of their claims. Since all issues were decided on summary judgment, we review *de novo* questions of both standing and the merits. See *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 755 (7th Cir. 2008). A moving party is entitled to summary

judgment if it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim. E.g., *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013).

If the moving party takes the former approach, the non-moving party must respond by offering evidence that would allow a reasonable trier of fact to find in that party's favor on the issue. *Id.* at 1168–69. The non-moving party "need not depose her own witnesses or produce evidence in a form that would be admissible at trial, but she must 'go beyond the pleadings' (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file)." *Id.*, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Plaintiffs always bear the burden of showing they have standing to sue. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). If standing is challenged by a motion for summary judgment, plaintiffs cannot rest on "mere allegations" but must offer evidence to support standing. *Id.* (internal quotation marks omitted). In addition, when a federal court addresses a claim for injunctive relief, it must take care to determine whether plaintiffs have offered evidence of a "real and immediate"—and not just a "conjectural or hypothetical"—threat of a future violation of their rights. See *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation and internal quotation marks omitted); *Scherr v. Marriot International, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).

Plaintiffs base their claims on the ADA and the Rehabilitation Act. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by the Act. 29 U.S.C. § 794(a). For public facilities built or altered after January 26, 1992, the public entity must ensure that the facility is not just possibly accessible but "readily accessible." 28 C.F.R. § 35.151(a), (b). For older facilities that have not been altered, however, the public entity need only ensure that "each service, program, or activity" offered by that public entity—as opposed to the entire facility operated by the entity—is "readily accessible." § 35.150(a). So long as the entity makes these services, programs, and activities accessible, it need not "make structural changes in existing facilities." § 35.150(b)(1).

III. *Defendants' Motion for Summary Judgment*

In the district court, defendants presented evidence that the courthouse services were readily accessible to plaintiffs and asserted there was no evidence to the contrary. In responding, plaintiffs did not seem to understand the obligation defendants' motion placed upon them. Instead of offering their own evidence, plaintiffs relied primarily on comments the district court made in its 2013 opinion denying a preliminary injunction. Those comments summarized testimony

about facts that might make a material difference in the case. But as the district court made clear, those citations to a prior opinion did not comply with the district court's Local Rule 56-1, which requires a party opposing summary judgment to "identif[y] the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2). The district court declined to rely on the factual assertions supported only by references to its prior opinion.

Plaintiffs argue that the district court erred under Rule 56-1 in refusing to consider as evidence citations to the district court's prior opinion. How strictly to apply a local rule, however, is left to the district court's sound discretion. See *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923–24 (7th Cir. 1994); see also *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). We find no abuse of discretion here. Federal Rule of Civil Procedure 56(c)(1)(A) does not identify prior judicial opinions as a form of evidence that may be used to support or oppose a motion for summary judgment. Absent a specific citation to the actual evidence in the record—as opposed to the district court's comments about such evidence at an earlier hearing—the district court did not abuse its discretion in declining plaintiffs' invitation to search the record itself to determine which evidence might support their position. See *Waldridge*, 24 F.3d at 923–24.

Without the factual assertions supported by only references to the district court's prior opinion, the only evidence left was testimony that the elevator control panel at the St. Joseph County Courthouse would not be accessible to the blind, testimony that the elevator is very old, state court documents for plaintiff Wright showing that she had further hearings

scheduled in the county courts, plaintiffs' attorney's admission that there is now an accessible restroom in the St. Joseph County Courthouse, a citation to the St. Joseph County Court Local Rules, and an affidavit by plaintiffs' attorney describing difficulties that people in wheelchairs face when parking near the St. Joseph County Courthouse.

Defendants offered more plentiful evidence in support of their motion for summary judgment, including: a sworn statement by Chief Judge Manier (whose courtroom was in Mishawaka), a sworn statement by Judge Reagan (courtroom in South Bend), affidavits of two city employees, and interrogatory responses from plaintiffs Hummel, Wright, Brandy-Comer, and Ramos.

We address each of plaintiffs' claims in turn. We conclude that plaintiffs failed to offer sufficient evidence in response to defendants' motion for summary judgment.

A. *Mishawaka Courthouse*

We start with the claims relating to the Mishawaka Courthouse, for which only the county is a defendant. Those claims for damages and injunctive relief cannot withstand summary judgment on this record.

First, no plaintiff has standing to seek injunctive relief regarding the Mishawaka Courthouse. Michael Ramos was the only plaintiff who litigated a case there. His case was dismissed without prejudice in February 2014. No evidence in the record suggests that any remaining plaintiff has plans to return to that courthouse. Absent evidence supporting a "real and immediate" threat that plaintiffs will be harmed by the non-ADA-compliant courthouse, plaintiffs lack standing to

seek injunctive relief. *Scherr*, 703 F.3d at 1074, quoting *Lyons*, 461 U.S. at 102.

Second, on the damages claims, plaintiffs failed to present evidence sufficient to survive summary judgment. They did not rebut defendants' evidence that the Mishawaka Courthouse is accessible. Defendants offered a statement by Chief Judge Manier of the St. Joseph Superior Court. She explained that all aspects of her courtroom complied with the ADA and made clear that if anyone with a disability were struggling to use the facilities in her courtroom, she would find a way to accommodate that person. Without contrary evidence explaining how plaintiffs were denied court services, the county is entitled to summary judgment on plaintiffs' claims for damages related to the Mishawaka Courthouse.

B.  *Parking near the St. Joseph County Courthouse*

In the district court, plaintiffs challenged (1) scarce accessible parking around the St. Joseph County Courthouse and (2) the difficulties of parking in winter months due to snow removal practices. These are the only claims against the City of South Bend. The district court concluded that plaintiffs had not offered evidence that the amount of accessible parking violated the ADA. We agree. Although there was some evidence in the record showing that parking availability had been a problem for individuals with disabilities, the ratio of accessible spaces to the overall spaces was well above the ADA Accessibility Guidelines. See *ADA Accessibility Guidelines for Buildings and Facilities* § 4.1.2(5)(a) (1991). The district court also determined that individuals with disabilities were not entitled to have special access to free on-street parking adjacent to the courthouse when such parking is not provided to

the public at large. Plaintiffs do not challenge this determination on appeal.

Regarding snow removal practices, the district court concluded that no plaintiff had standing, and that, even if one did, the lack of evidence in the record explaining how the city's current snow removal practices limit accessibility also justified summary judgment. We agree that no plaintiff has standing to challenge the city's snow removal practices.

Plaintiffs' lack of past harm prevents them from having standing to sue for damages. Plaintiffs presented no evidence that any plaintiff tried to visit the courthouse when there was snow on the ground. Nor is there any evidence that plaintiffs would have visited the courthouse in the past but were deterred from doing so because they knew the snow removal practices would prevent them from having access. See *Scherr*, 703 F.3d at 1075 (plaintiff lacked standing to sue hotels for lack of accessibility absent evidence that she had specific plans to visit them); cf. *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135, 1138 (9th Cir. 2002) (reversing dismissal for lack of standing because plaintiff alleged he was deterred from going to store because of ADA violation).

Plaintiffs' attorney's affidavit is insufficient to confer standing for damages. The attorney uses a wheelchair, and he described the obstacles he has faced due to the snow removal practices. But he has not been a plaintiff. The record lacks evidence that his obstacles to courthouse accessibility harmed the remaining plaintiffs themselves. The attorney explained that in "winter all curb-cut ramps within a two-block radius of the courthouses are frequently blocked by snow and are impassable," and that "[o]n a number of occasions, [his wife] found it necessary to bring a shovel to scoop out curb-cut

ramps filled with snow." Plaintiffs offered this evidence to establish that they were harmed by discrimination against their lawyer.

As a general matter, a plaintiff can be injured for purposes of the case-or-controversy requirement of Article III of the Constitution by unlawful activity targeting someone other than the plaintiff so long as the plaintiff is thereby harmed. Cf. *Lujan*, 504 U.S. at 562 (discussing possibility that "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*") (emphasis in original). One can easily imagine a litigant being harmed by her lawyer's inability to reach the courtroom on her behalf. But harm to the lawyer is not enough to show the client has a claim (though the lawyer might have his own claim). A plaintiff must offer evidence showing actual harm or a threat of imminent harm to herself to show standing for damages or injunctive relief for her own benefit.

We respectfully disagree with the broad language in the district court opinion rejecting any possibility of plaintiffs basing standing on discrimination against their lawyer. The court wrote that "Title II of the ADA does not provide for the sort of associational standing asserted." In fact, the ADA recognizes that a person can be harmed by discrimination against someone with whom he or she is associated. See 28 C.F.R. § 35.130(g) ("A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have *a relationship or association*.") (emphasis added).

While the law would permit such a claim, this record simply does not support standing to seek damages on this basis. The lawyer's affidavit, aside from general statements about the inaccessibility of the parking, specifically alleged only that the parking inaccessibility had affected his representation of plaintiffs Means and Matney, who have since passed away. Plaintiffs failed to offer evidence that they themselves suffered any injury because of discrimination against their attorney. Without such evidence, plaintiffs lack standing on the basis of their association with their attorney. See *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (declining to "scour" the record to help a party overcome summary judgment).

Unable to establish any claims for damages, plaintiffs Wright and Brandy-Comer argue that their ongoing state cases give them standing to seek injunctive relief. They argue that there is a chance they will be called into court on a day when there is snow on the ground. Based on their attorney's past experience with snow making ramps inaccessible, they argue that snow—along with the city's failure to remove it promptly—will make it difficult to reach the court on a day of inclement weather.

While recognizing that South Bend receives significant snowfall in most winters, we do not find evidence in this record that plaintiffs face a "real and immediate" threat that they will be subjected to a violation of their rights, even assuming that the city's failure to remove the snow constitutes a violation of the federal disability statutes. See *Scherr*, 703 F.3d at 1074. We could only speculate whether Wright and Brandy-Comer's cases will involve court appearances on future snowy days. This is not to say that the possibility of future

injury must be certain, but there must be at least a substantial risk that such harm will occur. See *American Bottom Conservancy v. United States Army Corps of Engineers*, 650 F.3d 652, 658 (7th Cir. 2011) (certainty not required; probable harm is enough); *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) (stating that "probability of future injury counts as 'injury' for the purpose of standing"). We cannot say that the risk presented here meets that standard, though if there are similar problems in the future, the district court may need to take action in a future case.

C. *Accessibility of the St. Joseph County Courthouse*

Finally, plaintiffs raise several accessibility problems posed by various features of the St. Joseph County Courthouse: the restrooms, elevators, water fountains, facilities for jurors, witness stands, podiums for lawyers, clerk counters, entrance ramp, and spectator seating. Plaintiffs also argue that there are insufficient services for the blind. Plaintiffs seek both damages and injunctive relief on these claims.

We agree with the district court that no plaintiff has offered sufficient evidence to maintain a claim for damages against the county. Three remaining plaintiffs, Hummel, Wright, and Brandy-Comer, have had some experience litigating in the St. Joseph County Courthouse. They have failed to offer evidence that they encountered accessibility problems in the courthouse, that those problems led to their inability to access court services, or that they were discriminated against on the basis of their disabilities.

Hummel has come the closest to offering evidence sufficient for a claim for damages. Unlike the others, he actually visited the courthouse to participate in a one-day bench trial.

Plaintiffs' interrogatory answers show that neither Wright nor Brandy-Comer has attended, let alone been harmed by attending, a court hearing in the St. Joseph County Courthouse.

But Hummel failed to offer evidence of more than his mere presence at trial. He argued to the district court that the "Court has well summarized [in its prior decision] the difficulties and problems individuals with disabilities faced in the main Courthouse" and that "Hummel is in that group." As noted above, the district court did not err by refusing to consider as evidence citations to its prior decision at the preliminary injunction hearing. Allegations that some litigants with disabilities may suffer discrimination when they enter the St. Joseph County Courthouse are not enough to show a genuine issue of material fact about whether Hummel personally suffered discrimination when he went to court. See *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (noting that "our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture") (internal quotation marks, citation, and alteration omitted).

This inference would be especially difficult to draw given the sworn statement of Judge Reagan, the judge who presided over Hummel's bench trial, indicating that she had no indication that anyone with a disability was having a difficult time during the trial. Plaintiffs are correct, of course, that Hummel may still have been discriminated against even if Judge Reagan had no reason to know that. There is no need to complain informally before suing (though it is hard to imagine that an informal complaint would have been futile). But again, plaintiffs offered no evidence to this effect.

The result is the same on the question of injunctive relief. Here, the district court correctly concluded that Wright and Brandy-Comer have standing to challenge the features of the courthouse that could cause them to suffer future discrimination because they had cases pending at the courthouse. They do not, however, have standing to challenge the features that would not directly affect a litigant, such as the jury facilities, or facilities that are inaccessible to the blind, a disability they do not have.

It is reasonable to infer from their concrete plans to continue pursuing state court litigation that Wright and Brandy-Comer will enter the courthouse in the future. Assuming they are correct that the courthouse is not in compliance with the ADA, it is also reasonable to infer that the features about which plaintiffs complain will limit the accessibility of the courthouse to plaintiffs for the foreseeable future. See *Scherr*, 703 F.3d at 1074–75. In other words, unlike the speculative risk that they might encounter snow at the courthouse some day in the future, there is a more substantial risk that plaintiffs will encounter discrimination based on these more permanent features of the courthouse.

But Wright and Brandy-Comer do not have standing to challenge all aspects of the courthouse. Because Wright and Brandy-Comer have failed to offer evidence explaining how they—as non-blind individuals with disabilities—might be injured by the lack of services for blind individuals, we conclude that the district court was right to deny plaintiffs standing to challenge services for the blind. Plaintiffs also do not have standing to challenge the jury facilities, although that poses a closer question. The district court rejected plaintiffs' attempts to establish standing to challenge juror facilities

based on the mere prospect that they might someday be called
to be jurors. Although there is a chance these plaintiffs will be
called to serve as jurors at some point, there is no concrete ev-
idence that plaintiffs have already been or likely will be called
as jurors. The prospect of jury service remains too speculative
to support standing to challenge juror facilities.

On appeal, plaintiffs offer a new theory to support their
standing to challenge the facilities for jurors. They argue that,
as litigants in civil cases, plaintiffs have standing to raise the
rights of jurors who have been excluded from serving on the
jury for discriminatory reasons. See *J.E.B. v. Alabama ex rel.
T.B.*, 511 U.S. 127, 128 (1994) ("We have recognized that
whether the trial is criminal or civil, potential jurors, as well
as litigants, have an equal protection right to jury selection
procedures that are free from state-sponsored group stereo-
types rooted in, and reflective of, historical prejudice."); *Ed-
monson v. Leesville Concrete Co.*, 500 U.S. 614, 618 (1991); see
also *United States v. Harris*, 197 F.3d 870, 876 (7th Cir. 1999)
(allowing challenge of peremptory strike of juror on the basis
of her disability even if only under "rationality review").

There are two reasons, however, that we cannot base
plaintiffs' standing on potential disability discrimination that
St. Joseph County Courthouse jurors might face. First, plain-
tiffs did not argue this theory of standing in the district court,
so it is waived. See *Economy Folding Box Corp. v. Anchor Frozen
Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008); *Robyns v. Reliance
Standard Life Insurance Co.*, 130 F.3d 1231, 1237–38 (7th Cir.
1997) ("The well-established rule in this Circuit is that a plain-
tiff waives the right to argue an issue on appeal if she fails to
raise the issue before a lower court."). Second, even if we over-
looked that waiver, plaintiffs have put nothing in the record

indicating more than a speculative probability that any of their state cases will require the use of a jury or that any members of the jury panel will be disabled. Usually, the party challenging the composition of the jury wants to undo the verdict the jury reached. See, e.g., *Edmonson*, 500 U.S. at 617. The case for standing here is far more speculative. The district court correctly determined that these plaintiffs lacked standing to challenge the facilities for jurors.[2]

As for the features of the courthouse that plaintiffs do have standing to challenge, the district court was correct to grant defendants' motion for summary judgment. Absent plaintiffs' reliance on the district court's order denying a preliminary injunction, plaintiffs failed to present evidence that the witness stands, drinking fountains, spectator seating, lawyer podiums, and clerk counters violate the ADA or Rehabilitation Act. Plaintiffs provided evidence that the elevator is very old, but without more that evidence would not support a finding that the elevator renders court services not readily accessible. See *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). There was much debate about the accessibility problems posed by the entrance ramp during the preliminary injunction hearing. At least two individuals suggested it was ADA-compliant, and the district court reminded plaintiffs that they had not produced any evidence that the ramp was not ADA-compliant. Plaintiffs did not or could not respond. In opposing summary judgment, they failed to offer additional evidence about accessibility problems posed by the ramp. The ramp might or

---

[2] We are confident, however, that if genuine accessibility problems remain, there will be future prospective jurors or others who will have standing to seek relief in federal court.

might not be ADA-compliant, but plaintiffs' lack of evidence requires us to affirm summary judgment on the point.

Finally, on the issue that looked most promising to plaintiffs at the preliminary injunction hearing—whether sufficient restroom facilities were accessible to plaintiffs using the St. Joseph County Courthouse—we agree with the district court that the county's intervening installation of ADA-compliant restrooms has eliminated any need for injunctive relief. Plaintiffs emphasize that at one point a person with a disability would have needed to go down to the courthouse basement and travel through a tunnel ramp to the neighboring county building to use an ADA-compliant restroom. That led the district court to conclude in its preliminary injunction opinion that "it appears that there are no public restrooms accessible to individuals in wheelchairs in the Courthouse itself, and there is no indication that the County accommodates individuals with disabilities by reassigning cases involving disabled parties, attorneys, witnesses, or spectators to fully accessible facilities elsewhere." As a result, the district court thought that there was at least a reasonable likelihood that plaintiffs could establish that the lack of restroom access rendered the courthouse less than readily accessible.

But the restroom situation has changed since that decision. The record indicates that there are now ADA-compliant restrooms in the St. Joseph County Courthouse. Plaintiffs conceded as much in their cross-motion for summary judgment, making clear that there was no longer a dispute of material fact that the county installed accessible restrooms in the courthouse.

Where, as here, an issue is no longer "live" and the parties "lack a legally cognizable interest in the outcome," the claim

is "moot and must be dismissed for lack of jurisdiction." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007), quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969); see also *Brown v. Bartholomew Consolidated School Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) ("A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be an opinion advising what the law would be upon a hypothetical state of facts.") (citation and internal quotation marks omitted). It is not enough that the controversy was live at an earlier stage of the case. Article III requires a live controversy throughout the existence of the case. See *St. John's United Church of Christ*, 502 F.3d at 626, citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). Because the county provided plaintiffs the relief they sought on this claim, plaintiffs do not currently have an interest in maintaining this claim.

That said, a defendant's decision to comply voluntarily with a plaintiff's demands does not always moot a request for injunctive relief. There may still be a risk that a defendant could reverse course once a claim is dismissed. See *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000); *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006). But voluntary conduct can moot a case "if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *Chicago United Industries, Ltd.*, 445 F.3d at 947 (citation and internal quotation marks omitted); see also *Friends of the Earth, Inc.*, 528 U.S. at 190 ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.").

When the defendant is a government actor, however, we ordinarily presume that the objectionable behavior will not recur. See *Chicago United Industries, Ltd.*, 445 F.3d at 947. In this case, the structural alterations to the courthouse would be difficult to undo, and there is no evidence that the county intends to prevent individuals with disabilities from using these ADA-compliant restrooms in the future. The district court properly dismissed the claims related to the restrooms.

IV. *Plaintiffs' Cross-Motion for Summary Judgment*

For the same reasons, we also affirm the district court's decision to deny plaintiffs' cross-motion for summary judgment. Plaintiffs sought a permanent injunction and a declaratory judgment requiring the county to maintain the restrooms it installed and to formalize the policy the county courts seem to have adopted to transfer a case involving a person with a disability to an ADA-compliant courtroom. Because all the underlying claims have since been disposed of—and there is no evidence that defendants will cease giving plaintiffs the accommodations they desire—there is nothing the county is currently doing or failing to do that these particular plaintiffs might still challenge.

Absent an ongoing challenge about whether the county has failed to make readily accessible to plaintiffs the court services it provides, that portion of this case has become, at least on this record, "an abstract dispute about the law not linked to the rights of a particular plaintiff." *Milwaukee Police Ass'n v. Board of Fire & Police Comm'rs*, 708 F.3d 921, 932–33 (7th Cir. 2013) (citation and internal quotation marks omitted); see also *Volkman v. Ryker*, 736 F.3d 1084, 1091 n.1 (7th Cir. 2013) ("If the injunctive relief is moot, we doubt whether, on these facts, the declaratory judgment request can stand alone."), citing *Rhodes*

*v. Stewart*, 488 U.S. 1, 4 (1988), and *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977). The district court correctly denied plaintiffs' request for a permanent injunction and declaratory relief rather than adjudicate a hypothetical issue.[3]

For all these reasons, the judgment of the district court is AFFIRMED.

---

[3] Plaintiffs make clear that one reason they sought declaratory relief was so that they might be considered prevailing parties for the purposes of receiving attorney fees. Plaintiffs argue that the defendants' changes on the issues on which they seek declaratory relief—installing new restrooms and adopting a policy of accommodation—came about in response to their lawsuit. The district court found no evidence in the record establishing plaintiffs' claims to have been the catalysts for these changes But even if it were true that plaintiffs' suit caused defendants to change, we would not be able to treat plaintiffs as prevailing parties under the so-called "catalyst" theory rejected by the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 600 (2001). The Court explained that absent a court order on the merits, plaintiffs cannot be considered a prevailing party even if they achieved their "desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* Plaintiffs recognized as much in their briefing before us and made clear that they seek to preserve the issue for possible Supreme Court review.