**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2017
Decided May 3, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 17-1867

| | |
|---|---|
| ANDREW U.D. STRAW,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>VILLAGE OF STREAMWOOD,<br>ILLINOIS, et al.,<br>    *Defendants-Appellees.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 16 C 50387<br><br>Virginia M. Kendall,<br>*Judge.* |

**O R D E R**

This appeal is the latest in a barrage of cases that appellant Andrew U.D. Straw has brought in the Seventh Circuit. Straw is disabled, and in the present action, he has sued five suburbs of Chicago for failing to clear snow and ice from their sidewalks in a timely manner—that is, quickly enough to ensure that Straw's access to a public facility was not impeded in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (ADA), and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). (Because these two statutes cover roughly the same territory for purposes of this case, we mention only

the ADA in this order. Our reasoning, however, applies to both.) The district court dismissed his complaint for lack of Article III standing and dismissed the case as a whole without prejudice. This was in substance a jurisdictional dismissal. We see no chance that Straw could have amended his complaint to cure the deficiencies the district court spotted. We therefore have appellate jurisdiction, and we agree that Straw failed to allege the type of immediate injury that is necessary for standing. We therefore affirm the judgment of the district court.

## I

We rely on Straw's complaint in presenting the background facts, but as usual that does not mean that we are taking a position one way or the other on his allegations. Straw is an attorney with physical disabilities and unspecified mental disabilities. In 2017 the Supreme Court of Indiana suspended his law license for 180 days without automatic reinstatement, based on its conclusion that he had filed four frivolous lawsuits. *In re Straw*, 68 N.E.3d 1070 (Ind. 2017). Straw tells us that the Northern District of Illinois and two other federal courts issued a reciprocal suspension, but that the Commonwealth of Virginia declined to do so. The status of Straw's law license, however, is largely irrelevant to the issues before us, and so we do not need to inquire further into the reasons why these jurisdictions came to the decisions they did.

Straw's physical disabilities, however, do matter. He has had ambulatory problems since his leg and pelvis were broken as a result of a car crash in 2009. The accident left him with screws in his leg, a metal framework in his pelvis for stability, and a hip replacement. Even with all this, he continues to experience "numbness and shooting pain" in his right hip, right femur, left leg, and left ankle. A fall could seriously injure him because of the metal in his pelvis, and he has balance problems resulting from scoliosis.

In late December 2016, Straw (a resident of Elgin, Illinois, which straddles Cook and Kane Counties), sued the City of Elgin, Kane County, and the Villages of Streamwood, Bloomingdale, and Glendale Heights for violations of the ADA and the Rehabilitation Act. He settled and voluntarily dismissed his claim against Kane County, but the case continued against the rest of the defendants. Straw alleges that they all left snow or ice on their sidewalks during the winters of 2015 and 2016. For example, he says, Streamwood and Bloomingdale left "long piles" of snow and ice on their sidewalks on March 8, 2015; Glendale Heights did the same a year later on March 8, 2016; and Elgin was similarly inattentive on December 22, 2016. Because of the snow on Elgin's sidewalk, Straw alleges, he had a "slow 1-block walk to [a] service station." A few weeks later, on January 9, 2017 (after the complaint was filed), Straw photographed

snow on a sidewalk in Streamwood that "blocked" his short walk to a Walgreens store. He also alleged that Streamwood provided an employee parking lot that lacked accessible parking and a proper ramp into an employee entrance. Straw attached to the complaint photographs of the snow about which he was complaining. He added in a later filing that he kept "running into the discriminatory actions demonstrated in my exhibits."

The failure to remove the snow and ice, Straw asserts, amounts to discrimination and a disregard of the defendants' duty under the ADA to "maintain accessible features" in a "useable condition" throughout the year. He sought compensatory damages and an injunction ordering the defendants to "cease disability discrimination in all public services and facilities, including sidewalks."

The four remaining defendants individually moved to dismiss all of Straw's claims. Collectively they argued that he lacked standing to seek either damages or injunctive relief because he had not asserted any injury-in-fact from their (assumed) failures to clear their sidewalks. Straw responded to the motions with more details. He said, for instance, that the sidewalk he used and photographed in Elgin in December 2016 provides the path from his house to a corner convenience store where he buys his food. He took the photographs while he was on such a trip, when four-day-old ice and snow made his progress difficult. With respect to Streamwood, Straw asserted that his fiancée lived in that town and he frequently used its sidewalks to obtain food, medicine, and postal services. The photograph showing the snow around the Walgreens on January 9, 2017, was taken from a spot between his fiancée's house and the store. In response to Glendale Heights's motion, Straw said that he saw the snow and ice while in his fiancée's car running an errand. The wintery mess made it impossible for him safely to exercise a right to demonstrate on the sidewalk. (Straw did not say that he was planning to do anything; he just said that he might want to demonstrate at some other time, because he is a representative of a disability-rights group.) As for Bloomingdale, Straw alleged that he sometimes used these sidewalks to run errands and shop with his fiancée. As in Glendale Heights, he was in a car when he noticed the alleged violations. He did not get out of the car because he did not want to endanger himself.

The district court granted the motions to dismiss on behalf of all four defendants. It concluded that Straw had failed adequately to allege that he personally had suffered (or even risked suffering) a concrete injury from the supposed ADA violations. At most, he had described a generalized grievance by stating that he is disabled and that he was present (in or out of a car) where the conditions arguably violated the statutes. The

court dismissed the action without prejudice and entered a judgment pursuant to Federal Rule of Civil Procedure 58 the same day.

**II**

Title II of the ADA prohibits discrimination in access to public facilities. A sidewalk is a "facility," see 28 C.F.R. § 35.104, and sidewalks built or altered after January 26, 1992, must be "readily accessible to and useable" by people with disabilities, *id.* § 35.151. For sidewalks built on or before that date, public entities need not make structural changes, but they must offer programs or services that are accessible to, and useable by, disabled persons. *Id.* at § 35.150. "[I]solated or temporary interruptions" in access on account of maintenance are excepted from the public entity's duty to maintain accessible facilities. *Id.* § 35.133; see *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 929–30 (7th Cir. 2004).

We begin by clearing away some of the legal underbrush. A plaintiff must demonstrate standing separately for each type of relief he seeks, see *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017). Straw's opening brief focuses on his standing to seek damages for past violations, without developing an argument about injunctive relief. We thus consider only whether Straw has offered enough to support standing to pursue damages.

Next, we can eliminate Straw's claims insofar as he relies on his anger and frustration from the defendants' failure to clear the snow and ice to demonstrate injury-in-fact. Those feelings may, and likely would, be shared by all people who see the uncleared sidewalks and are inconvenienced or impeded by the slippery conditions. See *Clay v. Fort Wayne Cmty. Sch.*, 76 F.3d 873, 879 (7th Cir. 1996); *Am. Civil Liberties Union of Ill. v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir. 1986). Straw also says that he felt excluded by the sight of the snow piled onto the sidewalks. This is simply too vague to support standing. A public entity's unjustified exclusion of people with disabilities can amount to discrimination under the ADA, see *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600–01 (1999), but Straw says only that he *felt* excluded. That feeling injures only Straw's interests as a concerned bystander. See *Freedom from Religion Found., Inc. v. Obama*, 641 F.3d 803, 806–07 (7th Cir. 2011). This is enough to dispose of Straw's claims for damages against Glendale Heights and Bloomington.

That leaves Straw's claims for damages against Elgin and Streamwood. In both of those instances, he at least has alleged that he uses the sidewalks that were not cleared in a timely manner. Here, too, some paring is possible. Straw has attempted to raise a claim against Streamwood for a lack of accessible parking and building entrances in the employee parking lot. But these violations (if they were indeed

violations) did not injure Straw, because he has not alleged that he is or was an employee of the Village. It is therefore hard to see how that alleged violation inflicted any concrete harm on *him*. See *Spokeo v. Robins*, 136 S. Ct. 1540, 1550 (2016). Because Straw is concerned only about the employee lot and entrances, his case is not the same as those involving more general access to public facilities. See, e.g., *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010 (7th Cir. 2016); *Foley*, 359 F.3d at 929–30.

We turn finally to Straw's argument that he was injured by the alleged failure of Elgin and Streamwood to clear the sidewalks that he has used for shopping and other daily necessities. The defendants argue that he has not shown how, specifically, he was personally affected by the sidewalk conditions. They are right that much of Straw's brief is devoted to the meritless argument that the mere existence of an ADA violation constitutes an Article III injury-in-fact. It is also hard to decipher what kind of discrimination he is talking about: discrimination against disabled people generally, or something more like a class-of-one discrimination claim related exclusively to himself? And Straw never says that he actually fell down or was hurt because of the defendants' violations; instead, he essentially is saying that he was excluded from the use of the sidewalks because they were too dangerous for him to use.

But try as we might, we cannot see how these allegations sufficiently distinguish Straw from the remainder of the population in those towns. Slippery sidewalks can be a menace to anyone, disabled or not. Perfectly healthy people fall down while they are shoveling their sidewalks or driveways, and they, like Straw, are undoubtedly irritated when their municipality does not clear the snow within a few hours of its cessation. Straw says that his injuries would be worse from a possible fall because of the metal in his pelvis, but he does not say that others might not also suffer from a serious injury, such as a broken wrist or arm. And as for Streamwood, Straw's claims are also wanting because he has not alleged that snowy conditions impaired his possible use of the sidewalk on any day before he filed his complaint. The snow he spotted on January 9, 2017, which allegedly blocked his route from his fiancée's house to Walgreens, cannot help his standing argument, because we must assess standing as of the time the action commences. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 191 (2000).

Straw has not provided enough detail to show how the snowy and icy conditions in Elgin and Streamwood impeded his access to the public sidewalks. His photographs, without additional explanation, leave too much to speculation. In addition, he does not tell us how long the unsatisfactory conditions persisted—an important fact, because the defendants are not liable for temporary interruptions in access. See *Foley*, 359 F.3d at 929–30.

We close by addressing several motions that Straw has filed. First, he wants to supplement the record on appeal with a letter from the Department of Justice responding to his Freedom of Information Act request for information about nationwide ADA complaints. That letter, however, was not before the district court, and so it may not be added to the record now. For that reason, we deny this motion. Second, Straw has filed two motions to recuse the judges of this court from hearing his appeal. He argues that recusal is warranted because we have taken actions that were adverse to him in the past: once when the court of appeals appointed as a bankruptcy judge a person who, prior to his judicial appointment, had served as a hearing officer for the Indiana bar and recommended that Straw's law license be suspended; and on another occasion, when a panel of this court misstated (in Straw's view) parts of the record in an unrelated appeal that he lost. Even if, however, the court, acting through the judges serving on panels, has ruled adversely to Straw, or factual errors have appeared in opinions, this does not amount to evidence of bias. See *Liteky v. United States*, 510 U.S. 540, 556 (1994); *Khor Chin Lim v. Courtcall Inc.*, 683 F.3d 378, 380 (7th Cir. 2012).

The recusal motion is actually strong evidence that Straw has either lost all perspective on the litigation process or that he is deliberately misusing the courts. By our count, he has filed 16 cases (including this one) in this court since August of 2014.[1] This is unacceptable. As the names of the cases reveal, he has brought many of these cases against the courts of this circuit and the Indiana courts and did not have a prayer of success. At least one is against a district-court judge, who is immune from suit for judicial actions. See *Stump v. Sparkman*, 435 U.S. 349 (1978). We warn Straw that this pattern must stop immediately, or he will be sanctioned and barred (apart from defending himself in criminal cases or pursuing writs of habeas corpus) from litigating in the courts of this circuit.

As for the present case, we AFFIRM the judgment of the district court.

---

[1] See *Straw v. Kloecker*, No. 14-1714; *Straw v. United States*, No. 15-2590; *Straw v. Ind. Sup. Ct.*, No. 17-1338; *Straw v. Magnus-Stinson*, No. 17-1560; *Straw v. Village of Streamwood* (this case), No. 17-1867; *In the matter of Andrew U. D. Straw*, No. 17-2523; *Straw v. Ind. Att'y. Gen.*, No. 17-3357; *Straw v. U.S. Dist. Ct. W. D. Wisc.*, No. 17-3550; *Straw v. Ind. Sup. Ct.*, No. 17-3596; *Straw v. Elgin Hous. Auth.*, 18-1073; *In re: Andrew U. D. Straw*, No. 18-1117; *In re: Andrew U. D. Straw*, No. 18-1118; *Straw v. U.S. Dist. Ct. N. D. Ind.*, No. 18-1387; *Straw v. Ind. Sup. Ct.*, No. 18-1497; *Straw v. U.S. Dist. Ct. S. D. Ind.*, No. 18-1698; and *Straw v. Amer. Bar Ass'n*, No. 18-1795.